IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER GILKEY, )
)
          Plaintiff, )
)
vs. )
) Case No. 11-1369-JAR
ADT SECURITY SERVICES, INC. )
)
)
          Defendant. )
_____)

## MEMORANDUM AND ORDER

This litigation arose as a result of Defendant ADT Security, Inc.'s decision not to rehire Plaintiff Christopher Gilkey in August 2011. Plaintiff filed this suit pro se in Sedgwick County District Court, claiming that Defendant's failure to rehire him constituted both race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964,[1] and Defendant removed the case to federal court in November 2011. On July 3, 2012, Plaintiff moved for summary judgment on both counts (Doc. 58). On November 9, 2012, Defendant filed a cross-motion for summary judgment on both counts (Doc. 78). Both motions are currently before the Court and are fully briefed, and the Court is prepared to rule. As described more fully below, the Court grants Defendant's cross-motion for summary judgment and denies Plaintiff's motion for summary judgment.

**I.    Legal Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no

---

[1] 42 U.S.C. § 2000e.

genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[2] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to

---

[2] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[3] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

"set forth specific facts showing that there is a genuine issue for trial."[9] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[13] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[14] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

"Where, as here, the parties file cross-motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary

---

[9]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[12]*Adams*, 233 F.3d at 1246.

[13]Fed. R. Civ. P. 56(c)(4).

[14]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[15]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

judgment is nevertheless inappropriate if disputes remain as to material facts."[16]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17]

## II. Uncontroverted Facts

Many of the relevant facts in this case are not controverted for purposes of summary judgment. In January 2007, Defendant hired Plaintiff as a High Volume Sales Representative, on a commission only basis. Plaintiff first worked for Aaron Westerman in Defendant's Wichita office, until Aaron Ellis transferred to the Wichita office in April 2007, and became Plaintiff's manager. In October 2007, Plaintiff filed an internal complaint alleging that Ellis was unfairly distributing company leads. After an argument with managers and other workers, Plaintiff was either suspended or temporarily terminated from employment in November 2007, although he was reinstated a few days later. Also in November 2007, ADT's Regional Manager of Human Resources, Karen Hawkins, asked Plaintiff to send her an email describing his concerns about Ellis. He emailed Hawkins a letter that described his general concerns and a particular conversation with Ellis. As Plaintiff described his conversation with Ellis in the letter to Hawkins, Plaintiff told Ellis that someone on the outside looking in at how Ellis was distributing leads would think Ellis was discriminating. Ellis allegedly responded that he did not care what the people outside of ADT might think, because, he suggested, "there are ways to cover it up and it is hard to prove."

---

[16]*James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[17]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

4

In January 2008, Hawkins entered a written response to Plaintiff's complaint against Ellis into Defendant's Global Compliance Hotline reporting system. The response stated, "Thank you for submitting your concern. This case has been closed and resolved. Please contact Karen Hawkins . . . if any additional information is needed." Also in January 2008, Ellis resigned from his position with Defendant, and Westerman became Plaintiff's manager.

Over a year later, on April 15, 2009, Plaintiff contacted Defendant's Global Compliance Hotline to make a complaint against Westerman. Plaintiff alleged that Westerman was unfairly distributing company leads, and he stated that Westerman was discriminating against him, but he did not allege racial discrimination; as Plaintiff stated during his deposition, "I said discrimination, I didn't add racial to it." Neither Hawkins nor Westerman understood the complaint to allege racial discrimination. Hawkins investigated Plaintiff's complaint and found no evidence that Westerman was showing favoritism in the distribution of company leads.

Defendant describes several episodes of inappropriate behavior by Plaintiff while he worked for Defendant. In addition to the November 2007 incident described above, in late August 2009, Westerman's manager, Jonah Serie, sent Westerman an email stating that he did not like Plaintiff's tone when speaking with Serie and other co-workers. Serie told Westerman to, "Get this rep under control or I will. He has NO business talking to anyone like this let alone his boss, his boss' boss and [other employees]. His tone with local admin needs to be addressed as well." Plaintiff also failed to meet a sales goal metric established by Defendant. It is unclear whether the goals were a requirement for continued employment, but it is clear that Defendant wanted its salesmen to meet the goal, and Plaintiff did not do so and stated that he did not try to do so.

On September 8, 2009, Plaintiff informed Westerman that he would be resigning from his position with Defendant effective September 22, 2009. Jonah Serie, Westerman's manager, told Westerman to let Plaintiff go on September 8, 2009, rather than allow him work until September 22, 2009. Plaintiff's last day of work was either September 9th or September 10th, 2009. On September 22, 2009, Westerman completed Plaintiff's termination paperwork and marked him ineligible for re-hire. Also in 2009, Westerman coded two Caucasian salesmen as ineligible for re-hire, based on their inability to meet sales goals, even though they voluntarily resigned from their employment with Defendant.

In early August 2011, Plaintiff received an email stating that Defendant was interviewing in his area. He applied for sales position but was told that he was not eligible for rehire. Plaintiff filed a Charge of Discrimination with the EEOC on August 4, 2011. In August and September 2011, Defendant hired two new Sales Reps in the Wichita, Kansas office—one an African-American female and one a Caucasian male.

**III.   Discussion**

When a litigant proceeds pro se, the "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[18] The Court makes

> some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record. It is not the proper function of the district court to assume the

---

[18] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

role of advocate for the pro se litigant.[19]

Thus the Court will attempt to discern the pro se litigant's arguments, but will not create his arguments for him. Based on Plaintiff's pleadings, the Court understands him to argue that Defendant failed to hire him based on his race or failed to hire him and/or designated him ineligible for rehire in retaliation for his complaints of race-based discrimination.

   A.   *Race Discrimination Allegation*

A plaintiff alleging that a failure to hire was based on racial discrimination must prove four *prima facie* elements: (1) Plaintiff is a member of a protected class; (2) He applied for an available position; (3) He was qualified for the position; and (4) He was rejected under circumstances which give rise to an inference of unlawful discrimination.[20] If the plaintiff proves these four elements, the defendant must provide a legitimate, non-discriminatory reason for the adverse employment action.[21] If the defendant provides such a reason, the plaintiff has an opportunity to establish that the legitimate, non-discriminatory reason was merely a pretext for a racial motivation.[22]

In this case, Defendant concedes for purposes of summary judgment that Plaintiff is a member of a protected class who applied for an available position, but Defendant maintains that Plaintiff cannot offer any admissible evidence to prove the third and fourth elements of the *prima*

---

[19] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir.2005) (quotations, alteration, and citation omitted).

[20] *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).

[21] *Id.* at 1278.

[22] *Id.* at 1278–79.

7

*facie* case, entitling Defendant to judgment as a matter of law.

Defendant argues that Plaintiff was not qualified for the position because he received a designation of not eligible for rehire on his termination paperwork when he left employment. Prior successful performance with a company can serve as evidence that an applicant is qualified for a position,[23] and, by the same reasoning, unsuccessful prior employment suggests that an applicant is not qualified for a position. Plaintiff's designation as not eligible for rehire suggests that his prior employment with Defendant was not successful. Here, Plaintiff offers no evidence to suggest that he is qualified, beyond his prior employment, and does not suggest that other individuals who were designated no rehire were nevertheless hired. Thus Plaintiff fails to create a genuine issue of material fact as to whether he is actually qualified for the position, one of the key elements of a *prima facie* case for discrimination. Plaintiff's claim that Defendant's failure to rehire him was based on racial discrimination thus fails.

Even if Plaintiff were able to create a genuine issue as to whether he was qualified for the position, he has failed to provide facts suggesting he was rejected under circumstances which give rise to an inference of unlawful discrimination. In August and September 2011, Defendant hired two new salesmen in the Wichita, Kansas office, one an African-American female and one a Caucasian male. These hires do not suggest a pattern of discrimination. The only fact Plaintiff presents that suggests discrimination is the 2007 conversation with Ellis, where Plaintiff suggested that "someone from the outside looking in would think [Ellis was] discriminating," and Ellis allegedly stated that "he [did] not care what the people outside of ADT might think. There [are] ways to cover it up and it is hard to prove." Even assuming that this fact is properly before the Court, this

---

[23]*Fischer v. Forestwood Co.,* 525 F.3d 972, 985 (10th Cir. 2008).

does not give rise to an inference of unlawful discrimination. Ellis left the company in January 2008, and was not with the company when Plaintiff was designated not eligible for rehire or when he was not rehired. These facts do not suggest unlawful discrimination, so Plaintiff has failed to meet the fourth requirement to make a *prima facia* case of race discrimination.

### B. Retaliation Allegation

A plaintiff alleging retaliation in violation of Title VII must prove three *prima facie* elements: (1) Plaintiff engaged in protected opposition to Title VII discrimination; (2) He suffered an adverse employment action; and (3) There is a causal connection between the protected activity and the adverse employment action.[24] If the plaintiff establishes a *prima facie* case, the defendant must provide a legitimate, non-discriminatory reason for the adverse employment action.[25] If the defendant provides a legitimate, non-discriminatory reason, the plaintiff has the opportunity to show that the given reason was merely pretextual.[26]

In this case, Defendant concedes for purposes of summary judgment that Plaintiff engaged in protected opposition to discrimination in October 2007, and suffered an adverse employment action in August 2011, when he was denied re-employment. Defendant maintains that Plaintiff cannot establish that he engaged in protected activity in April 2009, and that he cannot prove a causal connection. Construed broadly, Plaintiff argues that both the failure to rehire him and the decision to designate him do not rehire both constitute retaliation for his protected activity. Both of Plaintiff's arguments require that he engaged in protected activity in

---

[24]*Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).

[25]*Id.*

[26]*Id.*

April 2009, and that he prove a causal connection between the adverse action and his protected activity.

Plaintiff's protected 2007 activity does not serve as the predicate activity for this suit. Plaintiff does not argue that he suffered an adverse employment action after his 2007 complaint, and the subject of his 2007 complaint left the company. Further, the 2007 complaint is too far removed from the adverse employment action to support an inference of causation.[27]

For a claim of discrimination to be a protected activity under Title VII, the claim must be made in good faith and the discrimination must be based on a category protected under Title VII.[28] A claim of discrimination that does not state that the discrimination is based on a protected category is not a protected activity under Title VII.[29] Here, as Plaintiff admits, Plaintiff internal complaint against Westerman on April 15, 2009, alleged that Westerman was unfairly distributing company leads and stated that Westerman was discriminating against Plaintiff, but it failed to allege that Westerman was discriminating against Plaintiff based on his race. Hawkins and Westerman both state that they never understood that Plaintiff's complaint alleged racial discrimination, and Plaintiff can show no facts that suggest otherwise. Plaintiff's complaint of general discrimination, without more, does not qualify as protected activity under Title VII, so

---

[27]*Heiman v. United Parcel Serv., Inc.*, 12 F. App'x. 656, 665 (10th Cir. 2001) ("[A]n intervening period of nearly six months is not sufficiently "close temporal proximity" such that an inference of causation is warranted based on timing alone.").

[28]*Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x. 912, 916 (10th Cir. 1004).

[29]*Id.* ("[A] vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim."); *Wirtz v. Kansas Farm Bureau Serv., Inc.*, 274 F. Supp. 2d 1198, 1212 (D. Kan. 2003) ("The court will find opposing activity if the employee's comments, when read in their totality, oppose discrimination. However, protected activity must oppose discrimination prohibited by Title VII, and not merely take form of complaints about personal grievances.").

Plaintiff has not made out his *prima facie* case of retaliation.

Further, even if Plaintiff could show he engaged in protected activity, he has not shown a causal connection. A causal connection requires that the individual responsible for the adverse action be aware of the protected activity,[30] and in this case, Plaintiff has not offered any evidence that the individual decision-maker knew of his protected activity. As noted, both Hawkins and Westerman state that they never understood that Plaintiff's complaint alleged racial discrimination. And Plaintiff cannot even raise the inference of a causal connection; his inability to meet sales goals and his disciplinary episodes both provide adequate reason for Defendant to mark him as ineligible for rehire. Without showing a causal connection, Plaintiff cannot make his prima *facie* case for retaliation, and Defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Cross-motion for Summary Judgment (Doc. 78) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 58) is DENIED.

**IT IS SO ORDERED.**

Dated: <u>March 1, 2013</u>

                                         S/ Julie A. Robinson

                                         JULIE A. ROBINSON

                                         UNITED STATES DISTRICT JUDGE

---

[30]*Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).